# Boults *versus* Mitchell.

1. Two owners of land made a parol partition, by which one was to have *ten* acres and all the timber suitable for rafting, and the other was to have the balance of the land, about 147 acres, and *all the timber that was not* suitable for sawing, or the undergrowth; soon after, the latter sold by parol to plaintiff the 147 acres, and the plaintiff took possession, made improvements, and continued to occupy it.  About twenty years afterwards, viz. in April 1846, in pursuance of the parol contract, a deed was made to him, by the two former owners, for the 147 acres, *excepting and reserving therefrom all the timber that is suitable for rafting and sawing of every description,* &c.  Prior to the said deed, viz. in 1838, the original owners conveyed to another the ten acres, and sawmill, and all the timber that is suitable for rafting and sawing of any description on the 147 acres; *the latter purchaser had no notice of the parol contract: Held,* that the character of the timber is to be determined as it existed at the time of the conveyance to the *second* purchaser, viz. in 1838; and that the first purchaser could recover from the assignee of the second, the value of any trees cut, which were not fit for rafting and sawing at the time of the conveyance to the second purchaser, but which had become fit by reason of the increased growth since that conveyance.

2. The first purchaser had the right to require the second purchaser or his grantee or assigns to take the timber from the land in *a reasonable time,* which is to be judged of by the jury, taking into consideration the contract and intentions of the parties at the time of making it, the kind, quality, and quantity of the timber, its locality, and the other circumstances applicable to the case.

Error to the Common Pleas of *Wayne county.*

This was an action of replevin, by Isaac Mitchell against Cornelius Boults, for

|  |  |
|---|---|
| 198 hemlock logs | $98.00 |
| 52 pine logs | 52.00 |
| 20 chesnut, 20 oak, and 12 maple | 52.00 |
| 100,000 feet sawed hemlock | 500.00 |

The plea was *non cepit,* property in self and another.

The case was tried before the Hon. N. B. ELDRED, in September 1849.  The timber in dispute was on a tract of 147 acres.  The title to the 147 acres was admitted to have been in Abraham and Stephen

[Boults *v.* Mitchell.]

Mitchell in 1846. The plaintiff, however, claimed that his title to the land and timber originated as far back as from 1820 to 1825.

Above *twenty* years before the trial, Abraham and Stephen Mitchell made a parol partition of the land, by which *Abraham* was to have ten acres and the mill, and all the timber on the whole tract *which was fit for sawing at that time;* and Stephen was to have the 147 acres and the undergrowth of timber, subject to the right of Abraham to the timber then fit for sawing.

On the trial, *Stephen* testified that about twenty years before, he sold to *Isaac Mitchell,* the plaintiff, his brother, the 147 acres, subject to his brother Abraham's right to the timber. No writings were executed. That about eighteen years before the trial, Isaac improved on the tract of 147 acres, and has occupied it ever since; and that *in pursuance of this agreement,* Stephen and Abraham executed a deed to *Isaac,* the plaintiff, in 1846, conveying to him the 147 acres. By that deed, dated 28th April, 1846, Abraham and Stephen Mitchell and wives conveyed to Isaac Mitchell, the plaintiff, 147 acres of land in Damascus, *excepting and reserving therefrom all the timber that is suitable for rafting and sawing* of every description, said timber having been sold with Lukens's mill lot; special warranty.

The claim of Boults, the defendant, was as follows:—

Deed of Abraham and Stephen Mitchell, dated 20th June, 1838, to *Moses Thomas,* conveying the ten acres, sawmill and buildings, (except the grist-mill,) and also all the timber on the lot, of which these ten acres are a part, that *is suitable for rafting and sawing, of any description;* the land meant, was the 147 acres.

By deed, dated November 1st, 1841, Moses Thomas conveyed to John N. Lukens *the mill and ten acres* and all the timber suitable for rafting of every description on the lot of 147 acres.

Also, contract, September 5th, 1846, between John N. Lukens and C. Boults for ten acres and mill, *and timber suitable for sawing* of every description, *on lot owned by Isaac Mitchell,* of about 147 acres. Consideration, $900. The defendant, Boults, under this title, cut timber on the 147 acres; and for such or part of such timber, this action of replevin was issued

On the part of the plaintiff, it was contended that he was entitled to all the growth of timber *since the partition between Abraham and Stephen, between* 1820 *and* 1825. The plaintiff, however, did not claim any timber that was fit for sawing at the time of the parol division between Abraham and Stephen. But he alleged that the timber in dispute is from trees that have become suitable for rafting and sawing since that period, by reason of the natural increased growth of such trees.

On the part of the defendant, it was contended that the rights of the plaintiff were fixed and determined by the deed made by Abraham and Stephen, dated 28th April, 1846, to the plaintiff—that the

2 F 2

timber was all fit and suitable for rafting and sawing *at that time*, and as such, he, the defendant, was entitled to cut and take it—or, at all events, that the plaintiff could only claim for the growth of timber *subsequent to the deed to Judge Thomas, dated 20th June*, 1838, and that whatever was fit for sawing and rafting *at that time* the defendant could hold.

As to the notice:—This was wild land—timbered land—and plaintiff could not require the defendant to remove the timber any faster than the plaintiff wanted the land to clear and cultivate.

It was also contended that replevin cannot be maintained.

Property delivered to defendant.

On the trial, Abraham Mitchell testified:—Somewhere·from 1820 to 1825, I made a bargain with my brother Stephen.   I took the sawmill and ten acres and the right to cut the timber suitable for sawing off the whole tract.   Stephen was to have the land and all the timber that was not suitable for sawing.   The deed to Judge Thomas embraces the mill and the right to cut all the timber. Isaac, twenty years ago, lived on the mill lot.   For fourteen or fifteen· years he has lived on the 147 acre lot.   Isaac improved the 147 acres at the time he lived on the mill lot.

Stephen Mitchell testified:—About twenty-eight years ago, Abraham and I made this division.   No deed or writing made about the division.   I took the land and all the undergrowth.   He was to have the ten acres, and lumber suitable for rafting, and $700.   I paid him the cash.   There was no agreement as to the size of timber.   At that time, 18 inches hemlock was the smallest that was cut.   Sometimes, if we wanted a plate for building, we cut smaller sizes.

*Soon after* Isaac moved to the mill, Isaac paid me $1, and was to have 147 acres for it, exclusive of the mill and 10 acres.   He built a house on the 10 acres about twenty years ago.   He entered on the 10 acres, and afterwards entered on the 147 acres about twenty years ago.   From that time on he has occupied it.   *In pursuance of the bargain made with Isaac, in* 1828, *I made him a deed.*   Abraham *knew* of my sale to Isaac at the time.

At the time the deed was given to Judge Thomas, I did not inform him of any thing.

Cross-examined:—Isaac Mitchell never paid any thing but this dollar—never paid any thing to Abraham.

20th of June, 1838, when we made the deed to Moses Thomas, we cut much smaller timber.   In 1846, we were accustomed to cut much smaller timber.   In 1838, I suppose Judge Thomas cut over the lot.

It was alleged that Thomas, in 1838, cut all the large timber on the 147 acres, except a small quantity on the south-east corner of the lot.   Boults, in 1836, cut the large timber on the south-east corner of the lot which had been left by Thomas.   Of this, Isaac

[Boults *v.* Mitchell.]

Mitchell did not complain. But in 1847, Boults cut timber on the same part of the lot from which Thomas had culled the timber. That timber Isaac Mitchell claimed, alleging that Thomas having selected and cut the timber on the tract, with the exception of that on the south-east corner, his right or that of his assigns was exhausted as to the land from which the timber had been cut, and also to the timber on the south-east corner of the tract, which was not fit for sawing at the time of the conveyance in 1838.

On the trial, several points were submitted on the part of defendant :—

. 1st. That Boults, having the same title as Thomas, had the right under these conveyances to the timber standing on the lot in 1846, 1847, and 1848, as was suitable for rafting and sawing at that time ; and if the jury believe that the timber was fit and suitable for rafting or running, the plaintiff cannot recover. Answered in the charge substantially in the negative.

2d. That the rights of Isaac Mitchell are settled and defined by the deed to him, dated 28th April, 1846, and that, under the reservation in that deed, the title to such timber as was suitable for rafting and sawing belonged either to Abraham and Stephen Mitchell or to Boults; and if the jury believe this lumber was suitable for rafting or sawing on the 28th April, 1846, (the date of the deed to Isaac Mitchell,) then the plaintiff cannot recover. Answered in the negative in the general charge.

3d. That replevin will not lie in this case under the facts presented by the evidence. Answered in the negative, or refused to charge as requested.

ELDRED, J., charged :—This is an action of replevin, brought to recover the value of a quantity of logs and sawed timber, which the plaintiff alleges was taken from his land by defendant, between 7th December, 1847, and 1st March, 1848. To entitle the plaintiff to recover in this suit, he must establish by evidence that the property replevied belongs to him. *It is admitted that Stephen and Abraham Mitchell were the owners of the land from which this timber is said to have been taken, as early as 1820 to 1825.* It appears also, from the evidence of Stephen and Abraham Mitchell, that between the years of 1820 and 1825 they made a parol partition or division of this land, by which Abraham was to have ten acres and the mill, and the timber *fit for sawing at that time on the whole tract,* which contained about 147 acres, exclusive of the ten acres on which was the mill, and Stephen was to have this land and the undergrowth of timber, subject to the right of Abraham to the timber then fit for sawing, and to pay Abraham $700 for the difference in value. No writings were drawn or executed between these brothers, yet they always recognised each other's rights under their parol agreement, and when either desired to convey his part, they both joined in the deed in order to make the title.

[Boults *v.* Mitchell.]

It also appears from the evidence of these witnesses, *that about twenty years ago, the plaintiff* (another brother) moved on the ten-acre mill-lot belonging to Abraham, *and Stephen testifies that about that time he sold to the plaintiff, for the consideration of one dollar, the* 147 *acres, subject to his brother Abraham's right to the timber.* No writings were executed. That about eighteen years ago, the plaintiff improved on this 147 acres, and has occupied it ever since; and that, in pursuance of this agreement he executed with his brother a deed to the plaintiff in 1846, conveying to him this land *prout* the deed. This is briefly the plaintiff's title to the land, from which the timber·in controversy is said to have been taken.

On the 20th January, 1838, Abraham and Stephen Mitchell joined in the execution of deeds to Moses Thomas, conveying to him the ten acres of land, saw-mill, and buildings, (except the grist-mill,) and also *all the timber on the lot of which these ten acres are a part that is suitable for rafting and sawing of any description. The timber here alluded to is on the* 147 *acres.* This deed is placed on record, and *under which the defendant claims* the timber in dispute. The *plaintiff* does not pretend to claim any timber *that was fit for sawing at the time of the parol division between Abraham and Stephen,* by which the *latter* was entitled to the *undergrowth,* and under whom he claims. But he alleges that the timber now in dispute is from trees that have become suitable for rafting and sawing (if suitable at all) since that period, by reason of the natural increased growth of such trees; and for this reason he claims the property replevied. All this is denied by the *defendant.* He contends that the plaintiff's rights are defined in his deed from Abraham and Stephen Mitchell, under date of 28th April, 1846, and that he has no right to the timber that was suitable for rafting and sawing at that date, nor even subsequent to that date, to wit, in 1846, 1847, and 1848. That it either belongs to Boults, the defendant, or to Abraham and Stephen Mitchell. If the evidence shows that the property replevied belongs to Abraham and Stephen Mitchell, the plaintiff cannot recover in this suit. But does it belong to them? If the contest here was between Abraham and Stephen Mitchell and the plaintiff in relation to this timber, the court would adopt the general rule, which would be that all previous agreements and understandings between the parties were merged in the deed of 28th April, 1846. But this is not the present case. Abraham and Stephen, the grantors, have both been examined as witnesses to establish the plaintiff's claim to this property replevied. They not only recognise the plaintiff's right to it, but one of them testifies that this deed was made *in pursuance of the original contract* made many years ago. As they lay no claim to the property, but admit that it belongs to the plaintiff, what right has the defendant to object? He is not affected by such admission or right, if the property is not his own. The defendant's claim rests

[Boults *v.* Mitchell.]

on the deed from the Mitchells to Moses Thomas, dated 24th June, 1838, under which he claims. Nor can the plaintiff go back of that. His contract and agreements with his brothers rested in parol. *The defendant had no notice of them, nor is he affected by them.* What then does the defendant claim under that deed? *All the timber suitable for rafting and sawing of every description at that time.* The other timber, wood, or undergrowth, as well as the land, belonged to the plaintiff, and he is entitled to the increased growth of the timber, and not the defendant. *The defendant alleges that the logs and lumber replevied were from trees suitable for sawing in* 1838. The plaintiff denies it; *and the question for the jury is, whether the lumber and logs in dispute are taken from timber or trees suitable for rafting or sawing at that time. If not,* and if it only became suitable by reason of the increased growth since that time, the plaintiff is entitled to so much as he has proved to be of that description, taken by the defendant and embraced in this replevin, from the 7th December, 1847, to 1st March, 1848. The evidence relating to the growth of timber, description, and quantity, referred to the jury.

It appears that in August or September 1847, the plaintiff notified the defendant to take off what timber he had in the lot in two months' time, and forbid him taking any after that. Situated as the parties were, the plaintiff being the owner of the land and the defendant the owner of all the timber upon it suitable for rafting and sawing of every description, without any time fixed for his taking the timber off the land, the plaintiff could hasten the defendant by giving him notice to elect and take off his timber. *But this notice must be a reasonable one; and whether it was so or not, the jury must decide, under all the circumstances of the case.* They would take into consideration as well the contract as the intentions of the parties at the time they entered into it; the kind, quality, and quantity of the timber; its locality and proximity to the stream of water; the quantity of land from which it was to be removed, and, in fact, all the circumstances that surrounded the transaction at the time it occurred. But it is proper to observe, that I do not understand the plaintiff as putting his claim on the ground of the notice in this case; and if he did, the jury would hardly sustain him. He claims the property replevied to be the increased growth of the timber, and, in the opinion of the court, he has a right to do so after 1838, when the deed was made from the Mitchells to Thomas, under whom defendant claims. If under the evidence, the jury find that the property replevied in this suit is from timber not suitable for rafting and sawing on the 24th June, 1838, your verdict should be for the plaintiff, for the value of it as it was when replevied. The defendant's three points are answered in this charge, and substantially in the negative. To this charge defendant excepts, and it is filed at his request.

[Boults *v.* Mitchell.]

On the part of the defendant, so much of the charge of the court was excepted to as related to the plaintiff's right to recover the increased growth of timber since 20th June, 1838 ; and, also, to that part of the charge which relates to the plaintiff's right to give notice to defendant to make his election, and the obligation of defendant consequent upon said notice; and to the right of plaintiff to maintain an action of replevin under the facts of this case, and pray the court to reduce said charge to writing and file it of record.

Verdict was rendered for plaintiff.

It was assigned for error:

1st. The court erred in answering the defendant's first, second, and third points in the negative.

2d. The court erred in saying to the jury:—" The plaintiff could hasten the defendant by giving him notice to elect and take off his timber," &c.

*Wheeler, Dimmick, Collins,* and *Walker* were for Boults, plaintiff in error.

*Crane,* was for Mitchell, defendant in error.

The opinion of the court was delivered March 31, 1851, by

BELL, J.—The construction of the several deeds given in evidence, the legal effect of the parol proof by Abraham and Stephen Mitchell, and the relative rights and remedies of the litigating parties, flowing from the facts established, are correctly ascertained by the charge of the court below.

The clauses of reservation of what is called saw-timber, admit of no other interpretation than as speaking of the timber as it existed at the respective dates of the deeds, and, consequently, as fixing the several claims, as the growing trees might then be found fit or unfit to be sawed or rafted, under the general understanding of the country.  Were this even less clear than the language used would seem to make it, we should hesitate long to accept a construction variant from the interpretation adopted by an intelligent judge, conversant with the business habits and language of his district, and thus furnished with a key to the meaning of the parties, of which we are not possessed.

Nor do we see any reason to question the propriety of what the President of the Common Pleas said on the subject of notice.  In this case, however, it was truly observed to be of little consequence, as the plaintiff's claim to recover is not based on the sufficiency of his call on the defendant to remove the trees claimed by him.

Judgment affirmed.